U.S. DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>GWINN DESIGN AND BUILD, LLC,<br>RICHARD GWINN AND PAUL J.<br>STANTON. )<br><br>Defendants. ) | CIVIL ACTION NO.:<br>18-633 |

## **COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff, Nautilus Insurance Company brings this Complaint for Declaratory Relief seeking a judicial determination of the rights and responsibilities of the parties pursuant to its insurance policy.

## **THE PARTIES**

1.     Plaintiff Nautilus Insurance Company ("Nautilus") is an Arizona corporation with its principal place of business at 7233 East Butherus Drive in Scottsdale, Arizona.

2.     Richard Gwinn is a citizen of New Hampshire residing at 10 Wire Road in Merrimack, New Hampshire.

3.     Gwinn Design and Build, LLC is a New Hampshire limited liability company headquartered at the home of its principal Richard Gwinn at 10 Wire Road in Merrimack, New Hampshire.

4.     Paul J. Stanton is a citizen of New Hampshire residing at 42 Oak Drive in Bedford, New Hampshire.

## JURISDICTION

5.      This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332.

6.      This Court may also exercise jurisdiction pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §2201.

## STATEMENT OF FACTS

### Stanton's Claims Against Gwinn

7.      Gwinn Design and Build (hereafter "Gwinn") is a New Hampshire company specializing in home renovations.

8.      In 2015, Paul J. Stanton (hereafter "Stanton") hired Gwinn to renovate his home at 42 Oak Drive in Bedford, New Hampshire.

9.      On April 1, 2016, Stanton, through his counsel, notified Gwinn of his faulty and incomplete workmanship on the Property.

10.     On March 28, 2017, Stanton issued a demand letter to Gwinn pursuant to RSA 359-G:4(I) detailing Gwinn's faulty workmanship.

11.     Gwinn did not respond to Stanton's demands.

12.     On June 9, 2017, Stanton filed suit against Paul Gwinn in the Hillsborough County Superior Court.   A true, accurate and complete copy of Stanton's Verified Complaint is attached as Exhibit A to this Complaint.

13.     In his law suit, Stanton alleged that some of the work that he had hired Gwinn to perform was done improperly, other tasks were not completed on time and some were not done at all.

14.     Stanton's Complaint recited the following allegations:

> 27.  The Defendant has failed and refused to complete the remaining construction services required by the agreements between the parties.

28.   The Defendant breached the Agreement, Updated Agreement, and the agreement for the Extras by failing to perform the agreed upon construction services and the Extras.

29.  The Defendant did not provide a structural engineering report as required by the agreements.

30.  The Plaintiff was forced to incur a cost of $690.00 to secure a structural engineering report from an alternative source.

31.  Some of the construction services performed by the Defendant were defective and required, and/or continue to require, repair or replacement.

32.  The Plaintiff has been forced to incur, and will continue to incur, additional costs to have other contractors complete, repair, and/or replace incomplete and faulty workmanship and defective construction by the Defendant.

33.   To date, the Plaintiff has incurred expenses in the amount of $207,174.00 to complete, replace, and/or repair incomplete and faulty workmanship and defective construction by the Defendant.

34.   The Plaintiff has secured estimates for the cost of completing, remedying and repairing additional work that the Defendant failed to perform or inadequately performed.

35.  To date, the estimates total upwards of $55,000.00 for the completion of work, and/or repair of defective construction for work which should have been completed pursuant to the terms of the Agreement, Updated Agreement and Agreement for the Extras.

36.  The Plaintiff attempted to work with the Defendant to complete the agreed upon work and repair any defective workmanship to no avail.

37.  The Plaintiff, through counsel, notified the Defendant of his faulty and incomplete workmanship on the Property by correspondence dated April 1, 2016.

38.  The Defendant failed, or otherwise refused, to remedy the damage caused by his incomplete and faulty workmanship on the Property.

39.   On or about March 28, 2017, the Plaintiff; through counsel, provided notice to the Defendant of his construction defect claims pursuant RSA 359-G.

40.   Through the March 28, 2017 correspondence, the Plaintiff further provided notice to the Defendant of his breach of contract claims.

41.  The Defendant did not respond to the March 28, 2017 notice.

15.   Stanton's suit sought recovery for breach of contract (Count I); breach of the implied warranty of workmanlike quality (Count II); breach of the covenant of good faith and fair dealing (Count III) based upon Gwinn's "faulty and incomplete workmanship."

16.   In Count I (Breach of Contract), Stanton alleged:

45.   The Defendant had a duty to fulfill the terms of the Parties' agreement by furnishing such labor and services as outlined in the Parties' agreements.

46.   The Defendant failed in the performance aforesaid, in that the Defendant failed to provide materials, labor, and services required by the agreements, and provided unworkmanlike labor and services.

17.   In Count II (Breach of the Implied Warranty of Workmanlike Quality), Stanton alleged:

49.   Under New Hampshire law, a builder or contractor is deemed to give an implied warranty that improvements will be constructed in a workmanlike manner and in accordance with accepted standards.

50.   The Defendant failed to construct on the Property in a workmanlike manner and in accordance with accepted standards.

18.   In Count III (Breach of Covenant of Good Faith and Fair Dealing), Stanton alleged:

54.    The Defendant owed a duty of good faith and fair dealing to the Plaintiff in performing under the terms of the Agreement, Updated Agreement, and the agreement for the Extras.

55.    The Plaintiff had a justifiable expectation that the Defendant would act in accordance with the terms of the contractual agreements.

56.    The Defendant breached his duty of good faith and fair dealing by failing to complete the work as agreed upon and providing faulty and incomplete workmanship on the Property.

19.    Despite being served with Stanton's Complaint, Gwinn failed to appear and answer or otherwise respond to this law suit.

20.    On August 4, 2017, Stanton moved for entry of judgment, which motion was granted by the Superior Court (Abrahamson, J.) on September 13, 2017. The Superior Court also entered a separate Order assessing damages in the amount of $262,665.17. A true, accurate and complete copy of the Court's Order is attached as Exhibit B to this Complaint.

**The Nautilus Insurance Policy**

21.    Gwinn was insured by Nautilus for some or all of the time at issue in Stanton's claim against Gwinn.

22.    Policy No. NN545987 provided commercial general liability insurance coverage to Gwinn for the period May 18, 2015 to May 18, 2016. A true, accurate and complete copy of the Declarations Page and CGL coverage part for the Nautilus Policy are attached as Exhibit C to this Complaint.

23.    The insuring agreement for the Nautilus Policy gave the insurer the "right and duty" to defend covered claims for bodily injury or property damage as follows:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.      **Insuring Agreement**

   **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

   **(1)**   The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

   **(2)**   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

   **b.**   This insurance applies to "bodily injury" and "property damage" only if:

   **(1)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"….

24.     The terms in quotes are defined in the Nautilus Policy.  In particular,

"occurrence" is defined as meaning:

   **13.**   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

25. This grant of insurance coverage was subject to certain exclusions in the Nautilus policy, including the following, which stated that the policy does not apply to:

**j.    Damage To Property**

"Property damage" to:

(1)    Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

26. The term "property damage" is defined in pertinent part as meaning:

**a.**    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

       **b.**    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it….

27.    "Your work" is defined as meaning:

      a.    Means

          **(1)**    Work or operations performed by you or on your behalf; and

          **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

      **b.**    Includes

          **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

          **(2)**    The providing of or failure to provide warnings or instructions.

28.    Section IV to the Nautilus Policy set forth various conditions to coverage, including the following requirements concerning notice of accidents, claims or suits and cooperation in the investigation and defense of claims or suits:

**2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit**

      a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

          (1)    How, when and where the "occurrence" or offense took place;

          (2)    The names and addresses of any injured persons and witnesses; and

          (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.  If a claim is made or "suit" is brought against any insured, you must:

    (1)  Immediately record the specifics of the claim or "suit" and the date received; and

    (2)  Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.  You and any other involved insured must:

    (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    (2)  Authorize us to obtain records and other information;

    (3)  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    (4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**Nautilus' Response To Tenacity's Belated Notice**

29.  Nautilus never received notice of any of the foregoing from its insured.

30.  The first notice Nautilus had of the claims against Gwinn was a letter dated April 3, 2018 from counsel for Stanton that attached the Verified Complaint and Judgment against Gwinn (Exhibits A and B).  A true, accurate and complete copy of counsel's letter is attached as Exhibit D to this Complaint.

31.     Notwithstanding the Final Judgment that has entered against Gwinn, Nautilus has appointed Attorney James Q. Shirley to defend the interests of Gwinn and to ask the Superior Court to set aside the judgment and allow the case to go forward.

32.     While agreeing to hire counsel to protect its insured's interests, Nautilus has advised Gwinn that it is reserving all of its rights with respect to the insured's late notice and failure to comply with policy conditions as well as the absence of coverage for these claims.  A true, accurate and complete copy of this reservation of rights letter is attached as Exhibit E to this Complaint.

## CLAIMS FOR DECLARATORY RELIEF

### COUNT I
### No "Occurrence"

33.     Nautilus repeats and realleges the allegations set forth in Paragraph 1-32 as if fully repeated herein.

34.     In order to trigger coverage under the Nautilus Policy, any "property damage" must result from an "occurrence."

35.     The policy defines "occurrence," in pertinent part, as an "accident."

36.     In Fisher v. Fitchburg Mutual Ins. Co., 131 N.H. 769, 772-73 (1989), the New Hampshire Supreme Court declared:

> This court has construed the term "accident," in the context of "occurrence" coverage under insurance policies with almost identical coverage language, to mean "an undesigned contingency, ... a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Malcolm, supra* at 523, 517 A.2d at 802, *quoted in Jespersen v. U.S. Fidelity & Guaranty Co.,* 131 N.H. 257, 260, 551 A.2d 530, 532 (1988). To determine whether an injury is fortuitous or not, we apply this definition with reference to the insured. *Malcolm, supra* at 523, 517 A.2d at 802. An insured's intentional act can never be considered

accidental "unless some additional unexpected, independent and unforeseen [circumstances exist or] happening occurs which produces or brings about the result." *Id.* Furthermore, we assume that an insured's intentional act cannot be accidental when it is so inherently injurious that it cannot be performed without causing the resulting injury. *Malcolm, supra* at 524, 517 A.2d at 802. "From this perspective, an injury is not the result of an accident, and therefore not the result of an occurrence for which there is coverage, if the insured either intended that his act cause injury or intentionally engaged in an act so inherently injurious that it was certain to result in injury." *Jespersen, supra* at 260, 551 A.2d at 532.

37.     The allegations of Gwinn's faulty workmanship in renovating Stanton's home and his failure to perform or complete the work as promised do not describe an accidental "occurrence" insured by Nautilus.

WHEREFORE, judgment should enter for Nautilus due to the absence of any alleged "occurrence" triggering its policies.

## COUNT II
### Exclusion J(1)

38.     Nautilus repeats and realleges the allegations set forth in Paragraph 1-37 as if fully repeated herein.

39.     Exclusion J(1) states that the Nautilus Policy does not apply to property damage to "property you…occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason…"

40.     Stanton's home was allegedly damage while Gwinn was occupying it in the course of performing these renovations.

WHEREFORE, judgment should enter for Nautilus due to Exclusion J(1).

## COUNT II
### Exclusion J(5)

41.     Nautilus repeats and realleges the allegations set forth in Paragraph 1-40 as if fully repeated herein.

42.     Exclusion J(5) states that the Nautilus Policy does not apply to property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations."

43.     The damage to property described in Stanton's Verified Complaint were the result of operations performed by Gwinn and are therefore subject to Exclusion J(5).

WHEREFORE, judgment should enter for Nautilus by reason of Exclusion J(5).

## COUNT III
### Exclusion J(6)

44.     Nautilus repeats and realleges the allegations set forth in Paragraph 1-43 as if fully repeated herein.

45.     Exclusion J(6) stated that the Nautilus Policy does not apply to property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it."  However, this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

46.     The various defects and construction problems described in Stanton's Verified Complaint arose out operations that were being performed by Gwinn and are therefore subject to Exclusion J.6.

WHEREFORE, judgment should enter for Nautilus by reason of Exclusion J(6).

**COUNT IV**
**Exclusion L**

47.     Nautilus repeats and realleges the allegations set forth in Paragraph 1-46 as if fully repeated herein.

48.     Exclusion L stated that the Nautilus Policy does not apply to property damage to property damage to "'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'."  However, this exclusion "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

49.     Gwinn' faulty workmanship and failure to construct this house properly and on time is excluded by Exclusion L.

WHEREFORE, judgment should enter for Nautilus by reason of Exclusion L.

**COUNT V**
**(Breach of Duty to Give Notice of An Accident)**

50.     Nautilus repeats and realleges the factual allegations set forth in Paragraphs 1-49 as if fully restated herein.

51.     Condition 2(a) to the Nautilus policy advised Gwinn:

    a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1)    How, when and where the "occurrence" or offense took place;

        (2)    The names and addresses of any injured persons and witnesses; and

        (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

52.    Gwinn did not notify Nautilus of any problems involving this work.

53.    By reason of Gwinn's failure to comply with Condition 2(a), Nautilus was deprived of ability to undertake a seasonable investigation of this accident and was thereby prejudiced.

WHEREFORE, Nautilus seeks a declaration that any coverage that it might otherwise have owed for Stanton's claim was waived by reason of the prejudice that it suffered due to its insured's failure to comply with Condition 2(a) to the Nautilus Policy.

**COUNT VII**
**(Breach of Duty to Give Notice of A Claim or Suit)**

54.    Nautilus repeats and realleges the factual allegations set forth in Paragraphs 1-53 as if fully restated herein.

55.    Conditions 2(b) and (c) to the Nautilus policy advised Stanton:

    a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1)    How, when and where the "occurrence" or offense took place;

        (2)    The names and addresses of any injured persons and witnesses; and

        (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

56.    On April 1, 2016, counsel for Stanton sent a demand letter to Gwinn.

57.    Gwinn never notified Nautilus concerning the April 1, 2016 claim.

58.    On March 28, 2017, counsel for Stanton send a second demand letter to Gwinn pursuant to RSA 359-G.

59.    Gwinn never notified Nautilus concerning the March 28, 2017 claim.

60.     On June 9, 2017, Stanton sued Gwinn.

61.     Gwinn never notified Nautilus concerning Stanton's law suit.

62.     In 2017, Stanton moved for entry of a default judgment, which the court granted.

63.     Gwinn never notified Nautilus concerning this default judgment.

64.     By reason of Gwinn's failure to comply with Conditions 2(b) and (c), Nautilus was deprived of its ability to defend Gwinn or to question the plaintiff's alleged damages.

65.     By reason of Gwinn's actions, Nautilus was prejudiced in its ability to exercise its right to defend its insured or respond to these claims.

WHEREFORE, Nautilus seeks a declaration that any coverage that it might otherwise have owed for Stanton's claims was waived by reason of the prejudice that it suffered due to its insured's failure to comply with Conditions 2(b) and (c) to the Nautilus Policy.

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiff, Nautilus Insurance Company, respectfully requests that this Honorable Court enter judgment declaring:

1.     Nautilus is relieved of any on-going obligation to provide a defense to Richard Gwinn and/or Gwinn Design and Build with respect to Paul Stanton's claims;

2.     Nautilus has no duty to indemnify Richard Gwinn and/or Gwinn Design and Build for Paul Stanton's claims or, more particularly, for the judgment that the Superior Court entered against Gwinn in 2017;

3.      Nautilus should recover its attorney's fees and costs for this law suit; and

4.      Awarding Nautilus such other and further relief as this court may deem just and proper.

Respectfully Submitted,
NAUTILUS INSURANCE COMPANY,

By its attorneys,
**MORRISON MAHONEY LLP**

*/s/Michael F. Aylward*
Michael F. Aylward, #468
250 Summer  Street
Boston, MA 02210
Tel.:  (617) 439-7556
Fax.:  (617) 342-4913
*maylward@morrisonmahoney.com*

Dated:  July 23, 2018